# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| James A.B., | Civ. No. 19-1593 (NEB/BRT) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Andrew M. Saul,[1] Commissioner of Social Security, | |
| Defendant. | |

---

Stephanie M. Balmer, Esq., Falsani, Balmer, Peterson & Balmer, counsel for Plaintiff.

Marisa Silverman, Esq., Social Security Administration, counsel for Defendant.

---

BECKY THORSON, United States Magistrate Judge.

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his request for "301 program benefits."[2] This matter is before the Court on the parties' cross-

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

[2] Section 301 of the Social Security Disability Amendments, Public Law 96-265, was codified at 42 U.S.C. §§ 425(b) and 1383(a)(6). Section 425(b) applies to the Social Security or Title II disability program, and section 1383(a)(6) applies to the SSI or Title XVI disability program. These statutes are virtually identical and provide that an individual is entitled to continued benefits even if his impairment is no longer disabling if the individual meets certain conditions. These provisions are "commonly referred to as Section 301 because the initial legislative authority for continued payment of benefits to individuals in a VR program was provided in Section 301 of the Social Security Disability Amendments of 1980." POMS DI 14505.005.

motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 13, 16.) For the reasons stated below, this Court recommends that Plaintiff's motion for summary judgment should be granted to the extent that he requests a remand for further proceedings, but denied to the extent that he requests an immediate award of benefits. Defendant's motion for summary judgment should be denied.

## BACKGROUND

Plaintiff has had a history of chronic pain and medical problems after injuring his leg and back at a young age. The Social Security Administration ("SSA") found Plaintiff disabled for purposes of receiving benefits beginning May 6, 2002, at the age of 23, due to major depression and a pain disorder, and determined Plaintiff's disability continued in a decision dated May 11, 2005. (Tr. 10, 14, 44–46.)

Starting in 2010, while Plaintiff was still receiving disability benefits, Plaintiff began attending higher education courses at a college and then later at a university.[3] During this time, Plaintiff received assistance from the State of Minnesota's Department of Employment and Economic Development Vocational Rehabilitation Services agency ("the VR"). (Tr. 218–71, 565–83.) That assistance included financial assistance, with

---

[3] From 2010 until 2012, Plaintiff attended Lake Superior College and obtained his Associates of Arts degree. (Tr. 36.) From 2012 through 2014, he completed courses in social work at the College of St. Scholastica. (Tr. 37, 641.) In the fall of 2014, Plaintiff applied for and was accepted into the University of Wisconsin-Superior ("the University") for a degree in social work. (Tr. 634.) Prior to the start of classes in the fall of 2014, Plaintiff applied for the University's Disability Support Services program. (Tr. 620–24.) He requested academic support because of his lower back problems and depression. (*Id.*) Plaintiff's request was granted and he was authorized for Disability Support Services from September 2, 2014 through May 30, 2017. (Tr. 626.)

tuition, books, parking, and clothing; job development and placement; vocational training and counseling; and ultimately placement in a full-time job. (*Id.*)

After one year of coursework at the University, the SSA determined Plaintiff was no longer disabled as of October 1, 2015, due to medical improvement. (Tr. 43–55.) Plaintiff appealed that decision. On October 17, 2016, a Disability Hearing Officer upheld the cessation of the disability determination. (Tr. 77–95.) As part of that decision, the Officer stated:

> The claimant has engaged in a vocational training program which has not been evaluated for possible 301 benefit entitlement. If this current decision does not result in a continuation of disability benefits, the claimant's case will be sent for a 301 eligibility determination.

(Tr. 78, 90.) In the letter to Plaintiff accompanying the decision, the SSA stated:

> You told us that you were in a vocational rehabilitation program. If we approve your program, you will get checks until you finish it. We will review your program soon. And we will write you to let you know if it is approved.

(Tr. 95.)

While Plaintiff continued to challenge the disability cessation decision, he continued with his courses and continued to receive VR services. During that time, Plaintiff also continued to request 301 benefits. For example, in an appeal document dated November 2, 2016, Plaintiff stated the following:

> As noted by the DDS office in denying my reconsideration claim, I am in an approved vocational training program and I should be entitled to 301 benefits such that even if I am no longer disabled I should still continue to receive benefits until I complete the vocational program. It is anticipated that I will graduate in December 2016 and then will go through a course of job placement.

3

(Tr. 192.) On November 8, 2016, while still awaiting a hearing on Plaintiff's appeal, Plaintiff's counsel wrote to the Social Security Administration requesting that Plaintiff's 301 benefits be approved:

> . . . I do direct both of your offices to the attention of the findings of the DDS office in denying reconsideration on disability cessation. And specifically the hearing officer found that Mr. Braden was engaged in an approved vocational rehabilitation program such that even if disability cessation is appropriate, benefits should continue under the 301 benefit entitlement program. I enclose a copy of the judicial officer's decision and her finding is on page 14.
>
> Consequently I would ask the [Plaintiff's] benefits be reinstated under this program while we are waiting for the hearing on the cessation issue.

(Tr. 198.)[4]

Plaintiff finished his undergraduate coursework in December 2016, receiving his bachelor's degree in psychology from the University. (Tr. 629.) In March 2017, Plaintiff began performing substantial gainful activity when he started working for the University.

---

[4] Counsel wrote again on February 9, 2017:

> . . . Mr. [B.] is currently enrolled in school and should have ongoing entitlement to benefits, even if no longer disabled under the 301 program. In fact the hearing officer, during the conference, said as much.
>
> Yet, Mr. [B.] is not receiving benefits.
>
> Even if we lose the hearing in front of the ALJ, Mr. [B.] will be entitled to benefits until he completes schooling. We have asked numerous times for this to go into effect. To date nothing has happened. So I am asking again. It seems rather unfair to treat my client this way.

(Tr. 196.) He wrote yet again checking on status of the 301 benefits on April 3, 2017. (Tr. 197.)

4

(Tr. 295–97.) Approximately two months later, on May 4, 2017, the local Social Security Administration field office (Duluth) rejected Plaintiff's request for evaluation of Plaintiff's 301 eligibility. (*See* Tr. 296.)[5]

A hearing before an ALJ on Plaintiff's appeal was held on June 27, 2018.[6] (Tr. 25–42.) In a written decision issued on August 15, 2018, the ALJ determined that Plaintiff's disability ended as of October 1, 2015, after Plaintiff recovered successfully from his third lumbar surgery. (Tr. 18.) In his decision, the ALJ also denied Plaintiff's requested Section 301 payments, which Plaintiff requested from October 2015 (when the SSA ceased his disability benefits because of medical improvement) through March 2017 (when Plaintiff returned to work). The ALJ devoted only one paragraph in his decision to the Section 301 issue, and that paragraph is stated below in its entirety:

> On the issue of whether the claimant qualified for a 301 plan, there is no evidence to suggest that the claimant's college studies qualify as an "appropriate program" for purposes of Section 301 payments (Exhibit 14E). Although the claimant was receiving "vocational rehabilitation services" at university, the services in relationship to his course study does not amount to an "appropriate program" for purposes of Section 301 (Exhibit 24F). It seems that the claimant once qualified for Ticket-to-Work; however, the evidence does not clearly show that his upper level course studies qualified for the program (Exhibit 8E, p.20). In fact, on June 17, 2014, the claimant was advised that Minnesota Vocational Rehabilitation Services would no longer be available to the claimant in working toward a Master's degree. "[W]e won't be able to support you in your endeavor to acquire a masters in Social Work. This is for two reasons . . . One, our program is about

---

[5] A copy of the decision from the Field Officer is not included in the record before this Court.

[6] Although no questions were asked at the hearing regarding Section 301 benefits or Plaintiff's vocational rehabilitation program (*see* Tr. 25–42), Plaintiff's counsel did submit argument regarding the application of Section 301 in brief written form. (Tr. 296, Plaintiff's July 5, 2018 post-hearing brief to the ALJ.)

>employment, and there are numerous social service related jobs you can acquire with a BS in Psychology, so it would be difficult to justify a masters is needed in order to get a job . . . You are free to pursue your masters independently, after you have completed your bachelor's degree, and we can help you find employment in the meantime" (Exhibit 8E, p. 15).

(Tr. 16–17.)

Plaintiff requested review of the ALJ's decision to the Appeals Council. (Tr. 155–56.) That request was denied. This denial made the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981; (Tr. 1–4).

On June 17, 2019, Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.) The parties have filed cross-motions for summary judgment pursuant to the Local Rules. (Doc. Nos. 13, 16.) The only issue raised by Plaintiff in this appeal is whether the ALJ's decision regarding Plaintiff's eligibility for Section 301 program benefits is supported by substantial evidence in the record. Plaintiff is seeking Section 301 payments for the period starting in October 2015 when it was determined that he was no longer disabled, to March 2017 when he began working at a substantial gainful activity level. Plaintiff does not challenge the determination that his disability ended on October 1, 2015.

## DISCUSSION

### I.   Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Social Security Act provides for judicial review of the Commissioner's "final decision." 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Court may review a final decision of the denial of Section 301 benefits. 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); *see* 42 U.S.C. § 405(g). The Commissioner's decision will be upheld if the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010) (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003).

## II. Analysis of the ALJ's Decision

Plaintiff seeks payment of Section 301 benefits, arguing that even though the SSA determined he was not disabled in October 2015, he was already participating in vocational rehabilitation services that led to his gainful employment, and therefore he should receive the transitional Section 301 benefits from when the SSA determination

7

was made until he was able to have substantial gainful employment. Plaintiff argues that the ALJ's finding that Plaintiff was not eligible for Section 301 benefits is not supported by substantial evidence in the record. (Doc. No. 14 at 6–8.) Specifically, Plaintiff argues that the ALJ erred by failing to recognize his vocational rehabilitation services and support services at the University as an "appropriate program" for purposes of Section 301 and failed to explain his decision. (*Id.*) Defendant, on the other hand, argues that the ALJ properly found that Plaintiff was not eligible for Section 301 benefits because Plaintiff did not prove he was enrolled in an "appropriate program" of vocational rehabilitation. (Doc. No. 17 at 5–9.)

Section 301 provides that an individual is entitled to continued benefits even if his impairment is no longer disabling if:

> (1) such individual is participating in an approved vocational rehabilitation program under a State plan approved under Title I of the Rehabilitation Act of 1973 [29 U.S.C. 720 et seq.], and
>
> (2) the Commissioner of Social Security determines that the completion of such program, or its continuation for a specified period of time, will increase the likelihood that such individual may (following his participation in such program) be permanently removed from the disability benefit rolls.

42 U.S.C. § 425(b); *see also* 42 U.S.C. § 1383(a)(6)(A) and (B).[7] Consistent with the statute, the regulation states, in pertinent part, that a person's "benefits may continue after

---

[7] The ALJ did not say anything about whether paragraph (2) was met (i.e., that Plaintiff's participation in the program increased the likelihood that he would be permanently removed from the disability benefit rolls), presumably because he denied the Section 301 benefits based on paragraph (1). Neither party on appeal to this Court make any argument regarding paragraph (2), and therefore the only issue before the Court is whether the ALJ's determination regarding paragraph (1) was supported by substantial evidence in the record.

8

[the person's] impairment is no longer disabling . . . if . . . [the person is] participating in an appropriate program of vocational rehabilitation services . . . and . . . [the] completion of the program, or . . . continuation in the program for a specified period of time, will increase the likelihood that [the person] will not have to return to the disability . . . benefit rolls." 20 C.F.R. § 416.1338(a).

The regulations also define what an appropriate program of vocational rehabilitation services means:

> An appropriate program of vocational rehabilitation services, employment services, or other support services means—
>
> (1) A program that is carried out under an individual work plan with an employment network under the Ticket to Work and Self–Sufficiency Program under part 411 of this chapter;
>
> (2) A program that is carried out under an individualized plan for employment with—
>
> (i) A State vocational rehabilitation agency (i.e., a State agency administering or supervising the administration of a State plan approved under title I of the Rehabilitation Act of 1973, as amended (29 U.S.C. 720–751) under 34 CFR part 361; or
>
> (ii) An organization administering a Vocational Rehabilitation Services Project for American Indians with Disabilities authorized under section 121 of part C of title I of the Rehabilitation Act of 1973, as amended (29 U.S.C. 741);
>
> (3) A program of vocational rehabilitation services, employment services, or other support services that is carried out under a similar, individualized written employment plan with—
>
> (i) An agency of the Federal Government (for example, the Department of Veterans Affairs);

9

> (ii) A one-stop delivery system or specialized one-stop center described in section 134(c) of the Workforce Investment Act of 1998 (29 U.S.C. 2864(c)); or
>
> (iii) Another provider of services approved by us; providers we may approve include, but are not limited to—
>
>> (A) A public or private organization with expertise in the delivery or coordination of vocational rehabilitation services, employment services, or other support services; or
>>
>> (B) A public, private or parochial school that provides or coordinates a program of vocational rehabilitation services, employment services, or other support services carried out under an individualized program or plan;
>
> (4) An individualized education program developed under policies and procedures approved by the Secretary of Education for assistance to States for the education of individuals with disabilities under the Individuals with Disabilities Education Act, as amended (20 U.S.C. 1400 et seq.); you must be age 18 through age 21 for this provision to apply.

20 C.F.R. § 404.327(a).[8]

---

[8] The SSA's Program Operations Manual systems ("POMS") "Policy for Section 301 Payments to Individuals Participating in a Vocational Rehab" states, in relevant part:

> An appropriate program of VR services, employment services, or other support services is one of the following:
>
> . . . .
>
> 3. A program carried out under an individualized plan for employment (IPE) with a State VR agency (i.e., a State agency administering or supervising the administration of a State plan approved under title I of the Rehabilitation Act of 1973, as amended) as described in DI 55020.001D[.]

POMS DI 14505.010.

Plaintiff asserts that during the relevant time period, he received assistance from the State of Minnesota's Department of Employment and Economic Development Vocational Rehabilitation Services agency ("the VR") and the University of Wisconsin-Superior's Disability Support Services, and that these services qualified as an appropriate program as defined in 20 C.F.R. § 404.327. Plaintiff argues the ALJ's decision stating that these services "[did] not amount to an 'appropriate program' for purposes of Section 301" is conclusory and unsupported by the evidence. This Court agrees. The ALJ must "issue a written decision that gives the findings of fact and the reasons for the decision." 20 C.F.R. § 404.953, subd. (a). Here, the ALJ provided one paragraph in his decision about 301 benefits, and made two conclusory findings: (1) that the evidence did not suggest that the "vocational rehabilitation services" that Plaintiff was receiving at the University amounted to an "appropriate program" for purposes of Section 301; and (2) that the evidence did not show that Plaintiff's upper level master's degree coursework could qualify for the program.

As to the first finding, the ALJ provides no explanation for why he determined the evidence did not suggest that the vocational rehabilitations services—i.e., the State of Minnesota's Department of Employment and Economic Development Vocational Rehabilitation Services agency or the University of Wisconsin-Superior's Disability Support Services—was an appropriate program. Section 301 allows for many different types of vocational programs, and based on what has been presented in the record, it is at least plausible that at least one of these services is an appropriate service as contemplated by 42 U.S.C. § 425(b)(1) and 20 C.F.R. § 404.327(a)(2)(i), which would include a

11

program that utilizes an individualized plan for employment. Defendant argues that Plaintiff has not proven that he was in an appropriate program because "Plaintiff has not provided a written, individualized employment plan that covered the period from October 2015, when his disability ceased, through March 2017, when he began working." (Doc. No. 17, Def.'s Mem. 8.) However, in the record before this Court, there are many references to Plaintiff's employment plan dating back to 2010, 2012, and 2014.[9] (*See* Tr. 228, 229, 230, 236, 239, 240, 257, 261, 265 ("[Plaintiff] signed his employment plan . . .").)[10] This is at least some evidence supporting Plaintiff's claim that he was participating in an appropriate program, which is contrary to the ALJ's statement that "there is no evidence to suggest that the claimant's college studies[[11]] qualify as an 'appropriate program' for purposes of Section 301 payments." (Tr. 16.) Thus, this Court concludes there is not substantial evidence to support the ALJ's finding. If the ALJ felt he needed more information than what was already provided in the record to make a determination about the appropriateness of Plaintiff's vocational rehabilitations services, then the ALJ should have requested further documentation. The ALJ must further develop the record when the evidence is insufficient to reach a conclusion. 20 C.F.R.

---

[9] There is no dispute that Plaintiff began participation in the vocational rehabilitation program before the date his disability ended.

[10] There is also reference to Plaintiff being enrolled at one point in Ticket-to-Work. (*See* Tr. 235.)

[11] This Court assumes the ALJ meant the vocational services supporting Plaintiff's college studies and not the college studies themselves, as no one has argued that college studies in and of themselves would be an appropriate program under Section 301, but instead the services that support the studies.

12

§ 404.1520b(b); *see also Eichelberger v. Barnhart*, 390 F.3d 584, 592 (8th Cir. 2004) ("An ALJ has the duty to develop the record independent of the claimant's burden in the case."). As it stands, there is not substantial evidence in the record supporting the ALJ's finding.

As to the ALJ's second finding, he points to one communication from an employee working for Minnesota Vocational Rehabilitation Services in June 2014 stating that they would not be able to support Plaintiff while he was working for his master's degree. This communication, however, corroborates that prior to Plaintiff beginning his master's degree coursework, Minnesota Vocational Rehabilitation Services was supporting Plaintiff.[12] Moreover, this communication is beside the point. Plaintiff is not seeking Section 301 benefits after March 1, 2017, and it was not until the fall of 2017 that Plaintiff began his master's degree coursework. (Tr. 630.) Plaintiff's enrollment in a master's program in the fall of 2017 is irrelevant to the question of whether Plaintiff should have received Section 301 benefits from October 1, 2015, to March 1, 2017. Therefore, the ALJ's second finding was not relevant to the Section 301 benefit period being requested.

For these reasons, this Court concludes that the ALJ's determination regarding Plaintiff's requested Section 301 benefits is not supported by substantial evidence, and

---

[12]    This same June 2014 email also states that the vocational service will "continue to help [Plaintiff] acquire [his] BS in Psychology" and that they would help him find employment "in the meantime," while he completed his Bachelor of Science degree. (Tr. 230–31.)

remand is required for further development of the record and an explanation of the ALJ's reasoning.[13]

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) be **GRANTED IN PART**;

2. Defendant's Motion for Summary Judgment (Doc. No. 16) be **DENIED**;

3. This matter be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four), consistent with the above. On remand the ALJ should further investigate whether the State of Minnesota's Department of Employment and Economic Development Vocational Rehabilitation Services or the University of Wisconsin-Superior's Disability Support Service, which Plaintiff received services under, qualify as an appropriate program under the relevant statutes and

---

[13] "The typical remedy when the ALJ's disability determination is not supported by substantial evidence in the record as a whole is to remand for further administrative proceedings, especially in cases where the ALJ should have developed the record more fully." *Fishbaugher v. Astrue*, 878 F. Supp. 2d 939, 955 (D. Minn. 2012) (citing *Cox v. Apfel*, 160 F.3d 1203, 1210 (8th Cir. 1998)). "[R]eversal and remand for an immediate award of benefits is the appropriate remedy only where the record is fully developed and overwhelmingly supports a finding of disability. *Id.* (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009)). Here, although there is insufficient evidence in the record currently to support the ALJ's finding denying Section 301 benefits, the evidence supporting that Plaintiff's vocational rehabilitation services should be classified as an appropriate program under the statute and regulations is circumstantial and not fully developed. Therefore, remand for further proceedings is necessary.

regulations. The ALJ should then reconsider his decision regarding Plaintiff's request for Section 301 benefits and provide his reasoning for his conclusions in his written decision. The ALJ must explain why these programs meet the qualifications for an "appropriate program," or why they do not; and

    4.    Judgment be entered accordingly.


Date: May 7, 2020                                            *s/ Becky R. Thorson*_____
                                                                   BECKY R. THORSON
                                                                   United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).